CROCKETT & ASSOCIATES
  Robert D. Crockett (Bar No. 105628)
    *bob@bobcrockettlaw.com*
  Courtney E. Vaudreuil (Bar No. 223439)
    *vaudreuil@bobcrockettlaw.com*
23504 Lyons Avenue, No. 401
Santa Clarita, California 91321
Telephone:  (323) 487-1101
Facsimile:  (323) 843-9711

Attorneys for Defendant 123RF LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMARA LEE TAYLOR, an individual, and others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>123RF, LLC, a California Limited Liability Company; and DOES 1-10, inclusive,<br><br>          Defendant. | CASE NO.: 2:16-cv-04129-GHK-FFM<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  October 17, 2016<br>Time: 9:30 a.m.<br>Location: Courtroom 650<br><br>Filed with:<br>Declaration of Courtney E. Vaudreuil<br>Declaration of P'ng Chian Meng<br>[Proposed] Order |

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 17, 2016 at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 650 of the Central District Court located at 255 East Temple Street, Los Angeles, the Honorable George H. King presiding, Defendant 123RF LLC ("123RF LLC") will move and hereby does move for an order dismissing the Complaint of Plaintiff Tamara Lee Taylor

pursuant to Federal Rules of Civil Procedure Rules 12(b)(1) and (b)(6). 123RF LLC's motion is based on the following grounds:

1.     Plaintiff has incorrectly named 123RF LLC as the owner of a stock photography/image website from which she allegedly made certain purchases of stock photography licenses. 123RF LLC does not own a stock photography/image website. As these allegations form the basis of each of Plaintiff's claims, the Complaint should be dismissed in its entirety under Rule 12(b)(1) for lack of subject matter jurisdiction, alternatively under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

2.     Plaintiff's claims under The Federal Credit Card Accountability Responsibility and Disclosure Act of 2009, 15 USC § 1693 et seq., are barred by the one-year statute of limitations. Plaintiff fails also to allege facts to show that the credits she purportedly purchased constitute "gift certificates."

3.     Plaintiff's claim under California's "gift certificate" law, California Civil Code 1749.5 et seq., fails because that statute does not provide a private right of action.

4.     Plaintiff's claim for unlawful practices under California Business & Professions Code Section 17200 fails because Plaintiff has not alleged facts that the "credits" she allegedly purchased are "gift certificates" under California or federal law.

5.     Plaintiff's claim under California Business & Professions Code section 17200 fails as Plaintiff has not alleged facts that the expiration of "credits" was unfair.

6.     Plaintiff's claim for relief for violations of California Business & Professions Code section 17500 fails because Plaintiff alleges no facts describing a scheme to mislead customers, and or that each misrepresentation to each customer confirms that scheme. Plaintiff alleges no facts that she ever was deceived or relied upon any advertisements regarding the purchase of credits.

1        7.     Plaintiff has not alleged facts sufficient to support her claim for

2   violation of California's Consumer Legal Remedies Act, Civil Code § 1750,

3   because she has not identified any contract between 123RF LLC and her (or

4   anyone else) and has not stated facts that the "credits" she purchased were used for

5   buying goods and services.

6        8.     Plaintiff has not and cannot allege facts sufficient to support her claim

7   for Unjust Enrichment, because California law does not allow for an unjust

8   enrichment claim for relief and she has not identified any contractual or quasi-

9   contractual theory for relief.

10       123RF LLC met and conferred with counsel for Plaintiff on September 6,

11   2016, pursuant to Local Rule 7-3. Declaration of Courtney Vaudreuil ¶ 2.

12       123RF LLC's motion is based on this notice, the attached Memorandum of

13   Points and Authorities, the Declarations of P'ng Chian Meng and Courtney

14   Vaudreuil, all pleadings and records on file in this action, and any argument

15   presented to the Court at the motion hearing.

16

17   DATED: September 12, 2016       CROCKETT & ASSOCIATES

18

19                   By   */s/Courtney E. Vaudreuil*

20                    Robert D. Crockett

                     Courtney E. Vaudreuil

21                   Attorneys for 123RF LLC

22

23

24

25

26

27

28

CROCKETT &
ASSOCIATES
LOS ANGELES

iii

NOTICE OF MOTION AND
MOTION TO DISMISS

1
2                              TABLE OF CONTENTS

3  I.        INTRODUCTION AND FACTS.................................................................. 1

4  II.       ARGUMENT ......................................................................................... 1

5       A.    Standard of Review.......................................................................... 1

6       B.    123RF LLC Never Had A Relationship With Plaintiff ........................... 2

7       C.    Plaintiff Never Purchased a "Gift Certificate"..................................... 4

8             1.    Stock Photography Licenses Are Intellectual Property
                    Rights—Not Goods or Services.................................................. 4
9
              2.    "Goods" Refers To Movable Items—Not Intellectual
10                  Property Rights ...................................................................... 5

11            3.    "Services" Does Not Include Intellectual Property
                    Rights .................................................................................. 8
12
13      D.    Plaintiff's First Claim for Relief Should Be Dismissed
              Because Stock Photography Is Not Intended For "Personal,
14            Family, or Household Purposes" ...................................................... 8

15      E.    Plaintiff Has Not Alleged The "Credits" Have A Monetary
              Value ............................................................................................ 9
16
        F.    Plaintiff Cannot Bring A Claim Under California Civil Code
17            § 1749.5...................................................................................... 10

18      G.    The Credits Are Not Unlawful or Unfair Under California
              Business & Professions Code § 17200 .............................................. 10
19
        H.    Plaintiff Does Not State A Claim Under California Business
20            & Professions Code § 17500............................................................ 14

21      I.    Plaintiff Does Not State A Claim Under California Civil Code
              Section 1750 et seq. ..................................................................... 15
22
        J.    Plaintiff's Claim for Relief for Unjust Enrichment Fails...................... 16
23
        K.    Plaintiff's First Claim for Relief Is Time-Barred ................................ 17
24
   III.       CONCLUSION................................................................................... 20

25
26
27
28

# TABLE OF AUTHORITIES

## CASES

*Advent Sys. v. Unisys Corp.,*

   925 F.2d 670 (E.D. Pa. 1991) ....................................................... 6

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.,*

   747 F.3d 673 (9th Cir. Alaska 2014) ....................................... 5, 15

*Architectronics, Inc. v. Control Sys.,*

   935 F.Supp. 425 (S.D.N.Y. Aug. 1, 1996) .................................. 6

*Arocho v. Cal. Fair Plan Ins. Co.,*

   134 Cal.App.4th 461 (2005) ...................................................... 11

*Baker v. Urban Outfitters, Inc.,*

   254 F.Supp.2d 346 (S.D.N.Y. 2003) .......................................... 4

*Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of*
   *Cal., Inc.,*

   522 U.S. 192 (1997) ................................................................... 18

*Beeman v. Anthem Prescription Mgmt., LLC,*

   652 F.3d 1085 (9th Cir. 2011) ................................................... 12

*Camacho v. Automobile Club of Southern California,*

   142 Cal.App.4th 1394 (2006) .................................................... 13

*Cattie v. Wal-Mart Stores, Inc.,*

   504 F.Supp.2d 939 (S.D. Cal. 2007) ........................................... 2

*Caul v. Winter,*

   No. 06CV2096, 2007 U.S. Dist. LEXIS 68207 (S.D. Cal. Sept. 13,
   2007) ............................................................................................. 3

*Cel-Tech Communications, Inc., v. Los Angeles Cellular Telephone Co.,*

   20 Cal.4th 163 (Cal. 1999) ........................................................ 13

*Chevron, U.S.A., Inc. v. NRDC, Inc.,*

   467 U.S. 837 (1984) ..................................................................... 9

*Committee on Children's Television, Inc. v. General Foods Corp.,*

    35 Cal.3d 197 (Cal. 1983) ...................................................................... 14

*Cullinane v. Arnold,*

    No. SA CV 97-779, 1998 U.S. Dist. LEXIS 5575 (C.D. Cal. Mar. 24,

    1998).......................................................................................................... 3

*Cummings v. Harris,*

    No. 14-cv-02539, 2015 U.S. Dist. LEXIS 99197 (N.D. Cal. July 28,

    2015).......................................................................................................... 3

*Data Gen. Corp. v. Grumman Sys. Support Cop.,*

    36 F.3d 1147 (1st Cir. 1994) ................................................................... 5

*Davis v. HSBC Bank Nev., N.A.,*

    691 F.3d 1152 (9th Cir. 2012) ............................................................... 17

*Emplrs Ins. Of Wausau v. Granite State Ins. Co.,*

    330 F.3d 1214 (9th Cir. 2003) ............................................................... 12

*Fernandez v. Victoria's Secret Stores, LLC,*

    No. CV-06-04149, 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. Jul. 21,

    2008)........................................................................................................ 12

*Harvey v. Google Inc.,*

    No. 15-cv-03590, 2015 U.S. Dist. LEXIS 170381 (N.D. Cal. Dec. 21,

    2015 ........................................................................................................ 19

*Hennington v. FBI,*

    No. 08cv1033, 2009 U.S. Dist. LEXIS 1189 (S.D. Cal. Jan. 7, 2009)........................ 3

*Hernandez v. Lopez,*

    180 Cal.App.4th 932 (2009) ................................................................... 17

*Hodges v. Delta Airlines,*

    44 F.3d 334 (5th Cir. 1995) ..................................................................... 8

*Hughes v. CorePower Yoga, LLC,*

    2013 U.S.Dist. LEXIS 44127 (D. Minn. 2013)................................... 9, 14

1    *In re Bisphenol-A (BPA Polycarbonate Plastic Prods. Liab. Litig.*, MDL

2       No. 1967, Master Case No. 08-1967, 2011 U.S. Dist. LEXIS 50139

3       (W.D. Mo. 2011)) ................................................................................. 12

4    *Ingels v. Westwood One Broadcasting Services, Inc.,*

5       129 Cal.App.4th 1050 (2005) ............................................................... 10

6    *Khoury v. Maly's of California, Inc.,*

7       14 Cal.App.4th 612 (1993) .................................................................... 10

8    *Leonard v. Stemtech Int'l, Inc.*

9       Nos. 15-3198 & 15-3247, 2016 U.S. App. LEXIS 15565 (3d Cir. Del.

10      Aug. 24, 2016) ..................................................................................... 7, 9

11   *Lujan v. Defenders of Wildlife,*

12      504 U.S. 555 (1992) ................................................................................ 2

13   *McBride v. Boughton,*

14      123 Cal.App.4th 379 (2004) .................................................................. 16

15   *McKell v. Washington Mutual, Inc.,*

16      142 Cal.App.4th 1457 (2006) ........................................................... 15, 17

17   *Navarro v. Block,*

18      250 F.3d 729 (9th Cir. 2001) ................................................................... 2

19   *Park v. Webloyalty,*

20      No. 12cv1380, 2014 U.S. Dist. LEXIS 138340 (S.D. Cal. Sept. 29,

21      2014) ...................................................................................................... 19

22   *Petersen v. Lowe's HIW, Inc.,*

23      Nos. C 11-01996 RS, C 11-03231 RS, C 11-02193 RS, 2012 U.S. Dist.

24      LEXIS 123018 (N.D. Cal. Aug. 24, 2012) ............................................. 12

25   *Progressive West Ins. Co. v. Superior Court,*

26      135 Cal.App.4th 263 (2005) .................................................................. 13

27   *Reed v. Elsevier, Inc. v. Muchnick,*

28      559 U.S. 154 (2010) ................................................................................ 5

CROCKETT &
ASSOCIATES
Los Angeles

vii

NOTICE OF MOTION AND
MOTION TO DISMISS

*Reibstein v. Rite Aid Corp.,*

    761 F.Supp.2d 241 (E.D. Pa. 2011)..................................................... 12

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.),*

    779 F.3d 934 (9th Cir. 2014) ........................................................... 11

*Reynolds v. Philip Morris USA, Inc.,*

    332 F. App'x. 397 (9th Cir. 2009)................................................ 11, 12

*Rottner v. AVG Techs. United States, Inc.,*

    943 F.Supp.2d 222 (D. Mass. 2013).............................................. 2, 6

*RRX Indus. v. Lab-Con, Inc.,*

    772 F.2d 543 (9th Cir. 1985) ............................................................. 6

*Rubio v. Capital One Bank (USA), N.A.,*

    572 F.Supp.2d 1157 (C.D. Cal. 2008) .............................................. 10

*Savage v. Glendale Union High School Dist. No. 205,*

    343 F.3d 1036 (9th Cir. 2003) ............................................................ 2

*Schnall v. Hertz Corp.,*

    78 Cal.App.4th 1144 (2000)............................................................. 13

*Scott v. Breeland,*

    792 F.2d 925 (9th Cir. 1986) ............................................................. 2

*Sears, Roebuck & Co. v. Sears plc,*

    744 F.Supp. 1297 (D. Del. 1990) ...................................................... 3

*Seven Arts Filmed Entm't Ltd. v. Content Media Corp.,*

    733 F.3d 1251 (9th Cir. 2013) .......................................................... 18

*Sleash, LLC v. One Pet Planet, LLC,*

    No. 3:14-cv-00863, 2014 U.S. Dist. LEXIS 109253 (D. Or. Aug. 6,

    2014)................................................................................................... 7

*State St. Bank & Trust Co. v. Arrow Communications,*

    833 F.Supp. 41 (D. Mass 1993) ......................................................... 6

CROCKETT &
ASSOCIATES
Los Angeles

viii

**NOTICE OF MOTION AND
MOTION TO DISMISS**

*Unigard Sec. Ins. Co. v. Kansas Gen. Ins. Co.,*

    No. 93-35008, 1994 U.S. App. LEXIS 35914 (9th Cir. Dec. 7, 1994) .................... 19

*Warren v. Fox Family Worldwide, Inc.,*

    328 F.3d 1136 (9th Cir. 2003) ..................................................................... 2

*Waul v. Circuit City Stores*, No. A101414/A101792, 2004 Cal. App.

    Unpub. LEXIS 6391 (Cal. App. 1st Dist. July 9, 2004) ........................................... 12

*White v. Lee,*

    227 F.3d 1214 .................................................................................... 2

*Wike v. Vertrue, Inc.,*

    566 F.3d 590 (6th Cir. 2009) .................................................................. 18

## STATUTES

12 C.F.R. § 1005.1 ....................................................................................... 9

12 C.F.R. § 205 ....................................................................................... 8, 9

12 C.F.R. § 205.1(b) ................................................................................... 8

12 C.F.R. § 205.20(a)(1) ............................................................................. 9

15 U.S.C. § 1693 .............................................................................. 1, 17, 18

15 U.S.C. § 1693(b) .................................................................................... 8

15 U.S.C. § 1693b(a)(1) ............................................................................. 8

15 U.S.C. § 1693l-1 ............................................................................ passim

15 U.S.C. § 1693l-1(a)(2)(B) ...................................................................... 4

15 U.S.C. § 1693l-1(a)(2)(B)(ii) ................................................................. 9

15 U.S.C. § 1693l-1(c) ......................................................................... 18, 19

15 U.S.C. §1693m(g) ........................................................................... 18, 19

Cal. Bus. & Prof. Code § 17200 ............................................................ 10, 13

Cal. Bus. & Prof. Code § 17500 .................................................................. 14

Cal. Civ. Code § 1749.45 ............................................................................ 11

Cal. Civ. Code § 1749.5 ....................................................................... 10, 12

Cal. Civ. Code § 1749.5(a)(1) .................................................................... 10

Cal. Civ. Code § 1749.6 .................................................................................. 11

Cal. Civ. Code § 1750 ..................................................................................... 15

Cal. Civ. Code § 1761(a) ................................................................................ 15

Cal. Civ. Code § 1761(b) ................................................................................ 15

Cal. Civ. Code § 1761(d) ................................................................................ 15

Cal. Civ. Code § 1782(d) ................................................................................ 16

Cal. Civ. Code § 1783 ..................................................................................... 16

Cal. Civ. Code § 1802.2 ................................................................................... 8

U.C.C. § 2-105 .................................................................................................. 6

### RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................ 2, 20

Fed. R. Civ. P. 12(b)(1) ......................................................................... 1, 2, 20

### OTHER AUTHORITIES

*Black's Law Dictionary* (5th ed. 1979) .............................................. 5, 11

Kimberly W. Alcantara*, Current Issues Facing Advertisers and Advertising*
  *Agencies: Rights Clearance Overview, in Advertising Law in the Media*
  *Age 2000*, at 347, 357-58 (PLI Corporate Law and Practice, Course
  Handbook Series No. B0-00JG, 2000) ....................................................... 7

Lisa P. Ramsey, *Article: Intellectual Property Rights In Advertising*, 12
  Mich. Telecomm. Tech. L. Rev. 189 ......................................................... 7

Michael Heron & David MacTavish, Pricing Photography: The Complete
  Guide to Assignment and Stock Prices 7 (Allworth Press, U.S. 1997) ...... 4

Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, §§ 1015 ............ 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION AND FACTS

Plaintiff Tamara Lee Taylor's Complaint is a putative nationwide and California class action, predicated on allegations that "Defendant 123RF LLC's stock photography/imagery website" sold Plaintiff and others "pre-paid tranches of 'credits' that later expired." Complaint ¶ 1. Plaintiff does not identify the URL of the website where she purportedly made such purchases, but for purposes of this motion 123RF LLC assumes the website is http://www.123rf.com ("123rf.com").

Plaintiff claims that she made four purchases of credits from "123RF" on November 9, 2012, November 7, 2013, July 23, 2014, and July 28, 2014. Complaint ¶ 9. These credits were used to purchase licenses for stock photography. *Id.* at ¶ 2. The credits expired within 1 year of purchase. *Id.* Plaintiff alleges that the sale of these credits violated federal and California state laws relating to the sale of "gift certificates" bearing expiration dates. Complaint ¶¶ 50-107. Plaintiff brings her claims under 15 U.S.C. § 1693 et seq. ("CARD Act"), California Civil Code section 1749 et seq., California's unfair business practices statutes, and an equitable claim for unjust enrichment.

Plaintiff has not alleged facts that 123RF LLC ever sold such credits to her, because 123RF LLC does not own 123RF.com. Declaration of P'ng Chian Meng ¶¶ 5-6. Additionally, Plaintiff's Complaint fails because she cannot allege facts that the credits at issue fall within the purview of the federal or California gift certificate laws. Without this foundation, her remaining causes of action also fail.

## II.

## ARGUMENT

### A.   Standard of Review

Rule 12(b)(1) allows for a motion to dismiss where the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden is on the plaintiff to show

1    subject matter jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.

2    1986); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). Affidavits or

3    other evidence may support a "factual" standing challenge of a complaint. *White v.*

4    *Lee*, 227 F.3d 1214, 1242 (2000) (citation omitted); *Savage v. Glendale Union*

5    *High School Dist. No. 205,* 343 F.3d 1036, 1040 n.2 (9th Cir. 2003) (citation

6    omitted) (if the motion to dismiss for lack of jurisdiction is supported by evidence,

7    the plaintiff must respond in kind).

8         Plaintiff also fails to allege facts pursuant to Rule 12(b)(6) that state a claim

9    upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6)

10   motion to dismiss tests the legal sufficiency of the complaint. *Navarro v. Block,*

11   250 F.3d 729, 732 (9th Cir. 2001). The court is not required to accept conclusory

12   allegations in the complaint as true. *Warren v. Fox Family Worldwide, Inc.,* 328

13   F.3d 1136, 1139 (9th Cir. 2003) (citations omitted).

14        Plaintiff's claims against 123RF LLC should be dismissed in their entirety

15   under Rule 12(b)(1) and 12(b)(6) because she has sued the wrong entity. Plaintiff's

16   claims for relief should also be dismissed under Rule 12(b)(6) because she has

17   failed to state a claim upon which relief can be granted.

18   **B.    123RF LLC Never Had A Relationship With Plaintiff**

19        "One element of standing is that a plaintiff's harm must be 'fairly traceable

20   to the challenged action of the defendant, and not the result of the independent

21   action of some third party not before the court.'" *Cattie v. Wal-Mart Stores, Inc.*,

22   504 F.Supp.2d 939, 943-44 (S.D. Cal. 2007) (Wal-Mart Stores was not the same as

23   Wal-Mart.com, citing *Lujan,* 504 U.S. at 560).

24        123RF LLC never sold anything to Plaintiff. Declaration of P'ng Chian

25   Meng ¶¶ 5-6. There are no allegations to the contrary, other than broad statements

26   about a conspiracy. Complaint ¶ 12.

27        Courts have dismissed defendants under similar facts to those present in this

28   case. In *Rottner v. AVG Techs. United States, Inc.*, 943 F.Supp.2d 222, 227 (D.

Mass. 2013), the court looked at the End User License Agreement that the plaintiff agreed to before downloading software, to determine the contractual partner. The plaintiff sued AVG CZ, a company in the Czech Republic that sold software through its website, and AVG US, the sister company that operated retail stores. *Id.* at 224. AVG US moved to dismiss because it did not sell software to plaintiff and because plaintiff contracted with AVG CZ. *Id.* at 228. Plaintiff argued AVG US was an alter ego because AVG CZ and AVG US were owned by the same parent corporation and AVG US reviewed marketing materials on the website. *Id.* The court rejected plaintiff's arguments:

> Rottner has not alleged any facts to support the naked allegation that AVG US was operated as a "facade" for AVG CZ or that it did not adhere to basic corporate formalities in its day-to-day operations. Perhaps of greater significance, Rottner has failed to show "fraud, injustice, or inequity in the use of the corporate form."

*Id.* at 229 (citing *Sears, Roebuck & Co. v. Sears plc,* 744 F.Supp. 1297, 1304 (D. Del. 1990).

In this case, Plaintiff has not alleged any facts relating to 123RF LLC owning 123RF.com or selling her "credits." It did not. Meng Declaration ¶ 4. A party who has been improperly named as a defendant in a lawsuit may also be entitled to dismissal under Rule 12(b)(6). *See, e.g., Cummings v. Harris*, No. 14-cv-02539, 2015 U.S. Dist. LEXIS 99197, *7-8 (N.D. Cal. July 28, 2015); *Hennington v. FBI*, No. 08cv1033, 2009 U.S. Dist. LEXIS 1189, *5-6 (S.D. Cal. Jan. 7, 2009); *Caul v. Winter*, No. 06CV2096, 2007 U.S. Dist. LEXIS 68207, *14 (S.D. Cal. Sept. 13, 2007); *Cullinane v. Arnold*, No. SA CV 97-779, 1998 U.S. Dist. LEXIS 5575, *9 (C.D. Cal. Mar. 24, 1998).

**C.      Plaintiff Never Purchased a "Gift Certificate"**

**1.      Stock Photography Licenses Are Intellectual Property Rights—Not Goods or Services**

Plaintiff's first claim for relief fails because Plaintiff has not presented facts to establish that she ever purchased a "gift certificate." Plaintiff claims that the credits she purchased from "the website" qualify as "gift certificates" under 15 U.S.C. § 1693l-1. Complaint ¶ 32. The complete language of section 15 U.S.C. 1693l-1(a)(2)(B) (emphasis added) follows:

> (B) Gift certificate. The term "gift certificate means an electronic promise that is--
>> (i) redeemable at a single merchant or an affiliated group of merchants that share the same name, mark, or logo;
>> (ii) issued in a specified amount that may not be increased or reloaded;
>> (iii) purchased on a prepaid basis in exchange for payment; and
>> (iv) honored upon presentation by such single merchant or affiliated group of merchants **for goods or services**.

Section 1693l-1(a) in its entirety specifies no less than three times that it only applies to cards, gift certificates and store gift cards that are "honored upon presentation by such a single merchant or affiliated group of merchants for **goods or services**." *Id.* (emphasis added). Plaintiff's omission of these four critical words is telling.

A license is fundamentally an intellectual property right—***not goods or services***. Stock photography involves "selling (licensing) rights to reproduce an already existing photograph." *Baker v. Urban Outfitters, Inc.*, 254 F.Supp.2d 346, 354 (S.D.N.Y. 2003) (citing Michael Heron & David MacTavish, Pricing Photography: The Complete Guide to Assignment and Stock Prices 7 (Allworth Press, U.S. 1997)). The Ninth Circuit describes stock photography:

> In "stock photography," the photographer usually makes the images before he has a customer. He then contracts with a stock agency for the agency to handle copyright registration and licensing, often for a cash payment up front to the stock agency and a percentage of whatever the stock agency collects. **Purchasers buy permission from the stock agency to use particular pictures, usually for a limited number of copies, with the prices varying from less than a dollar to perhaps a couple of hundred dollars.** The photographer's income depends on getting noticed and on volume, since the pictures are licensed so inexpensively.

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 676 (9th Cir. Alaska 2014) (emphasis added).

A license is: "[P]ermission to use the property of another" (citing *Black's Law Dictionary* 829-30 (5th ed. 1979)) and "can be general with few or no restrictions, or quite limited." *Data Gen. Corp. v. Grumman Sys. Support Cop.*, 36 F.3d 1147 (1st Cir. 1994), *abrogated on other grounds by Reed v. Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160 (2010). If a shirt manufacturer licenses the right to use the Los Angeles Rams' logo on its jerseys, it is not purchasing the mark itself; it is purchasing the intellectual property right to *use* the logo on its goods. Similarly here, Plaintiff never alleges that making a purchase of a stock photograph makes her the owner of the photograph. She cannot make this allegation because the nature of stock photography is that the same image (owned by the copyright holder) can be licensed to different people at the same time. Under the facts alleged, Plaintiff is not purchasing "goods or services."

### 2. "Goods" Refers To Movable Items—Not Intellectual Property Rights

While section 1693l-1 does not define "goods," the Uniform Commercial Code does. "Goods" are "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and

things in action….." U.C.C. § 2-105. Notably absent from this definition is any mention of intellectual property rights such as licenses, copyrights, trademarks, or patents.

Plaintiff may attempt to draw an analogy to case law relating to software to argue that a license is "goods." This analogy fails. In *Advent Sys. v. Unisys Corp.*, 925 F.2d 670, 675 (E.D. Pa. 1991), the court found that software, while having an intellectual property component, was a "good" under the UCC. "That a computer program may be copyrightable as intellectual property does not alter the fact that once in the form of a floppy disc or other medium, the program is tangible, moveable and available in the marketplace." *Id.* Similarly, in *Rottner,* 943 F.Supp.2d at 230, the court found software qualified as goods where plaintiff could download and install the program after payment. However, the court noted that the outcome would be different if the case involved the transfer of intellectual property. *Id.* at 231 n.11. By contrast, in *Architectronics, Inc. v. Control Sys.*, 935 F.Supp. 425, 432 (S.D.N.Y. Aug. 1, 1996), the court found that the transfer of an intellectual property right relating to software was not subject to Article Two of the U.C.C. The court explained that while software is generally a good, "[C]opyrights, patents, and trademarks are classified as 'general intangibles' under the UCC and are distinguished from goods." *Id.*; *cf State St. Bank & Trust Co. v. Arrow Communications,* 833 F.Supp. 41, 48 (D. Mass 1993) (in bankruptcy proceedings finding a broadcast license to be a "general intangible," defined as "any personal property, including things in action, other than goods, accounts, chattel paper, documents, instruments and money").

Although both software and a stock photograph may be downloaded from a website, and both involved license agreements, the similarities end there. One must consider the nature of what exactly is being sold. *See, e.g., RRX Indus. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985) ("In determining whether a contract is one of sale or to provide services, we look to the essence of the agreement. […]

**NOTICE OF MOTION AND
MOTION TO DISMISS**

Because software packages vary depending on the needs of the individual consumer, we apply a case-by-case analysis") (citations omitted).

It is the licensing of stock photography is more akin to the licensing of a trademark. One can incorporate the photograph into marketing materials, websites, and PowerPoint presentations, among other things, subject to specific restrictions that go beyond the typical prohibitions against re-distribution one finds with software. *See, e.g., Leonard v. Stemtech Int'l, Inc.* Nos. 15-3198 & 15-3247, 2016 U.S. App. LEXIS 15565, *2-3 (3d Cir. Del. Aug. 24, 2016) (in a copyright case, plaintiff's stock photography work described: "The licensing fee Leonard charges varies depending on whether his images are used for commercial, editorial, or educational purposes. Licensing fees are also impacted by the size, color, and the medium in which the images will appear.")

It is the qualitative restrictions that demonstrate the licensing of a stock photograph falls into a similar category to the licensing of a trademark. *See, e.g.,* Lisa P. Ramsey, *Article: Intellectual Property Rights In Advertising*, 12 Mich. Telecomm. Tech. L. Rev. 189, 206 ("Commonly licensed elements in advertising materials include music, talent and right of publicity rights, stock photography, stock footage, characters and third-party trademarks") (citing Kimberly W. Alcantara*, Current Issues Facing Advertisers and Advertising Agencies: Rights Clearance Overview, in Advertising Law in the Media Age 2000*, at 347, 357-58 (PLI Corporate Law and Practice, Course Handbook Series No. B0-00JG, 2000)).

In *Sleash, LLC v. One Pet Planet, LLC*, No. 3:14-cv-00863, 2014 U.S. Dist. LEXIS 109253, *7 (D. Or. Aug. 6, 2014), the parties had a license agreement for the use of plaintiff's trademarks, while the licensor retained the ownership interest in the marks. A condition of defendant's use of the mark was that the "quality of the Licensed Products shall be satisfactory to Licensor . . .." *Id.* at *9. The court explained, "It is also a good practice to include a provision in the [trademark] license grant that: (1) the license is subject to the licensee complying with the

licensor's guidelines and maintaining quality control over the use of the mark…."
*Id.* at *38, n.2 (quotations and citations omitted). When stock photography is sold, there are similar restrictions relating to "quality control" regulating the use in order to protect the integrity of the photograph; such as prohibiting the use of the photographs in pornographic, obscene, immoral, or defamatory materials, among others. Plaintiff omits any facts describing the terms of the licensing agreement for the stock photographs she licensed.

### 3.    "Services" Does Not Include Intellectual Property Rights

Plaintiff has not alleged facts to show that the credits she purchased from the website could be used for services. While the statute also does not define "services," other California state law and case law provides guidance as to its meaning. California's Unruh Act relating to credit sales defines services as, "[W]ork, labor and services, for *other than a commercial or business use*…." Cal. Civ. Code § 1802.2; *see Hodges v. Delta Airlines*, 44 F.3d 334, 354 (5th Cir. 1995), (under the Airline Deregulation Act of 1978, court defined "services" as "a bargained-for or anticipated provision of labor from one party to another"). Under these definitions, Plaintiff has not allegedly any facts that she used her credits to obtain "services."

### D.    Plaintiff's First Claim for Relief Should Be Dismissed Because Stock Photography Is Not Intended For "Personal, Family, or Household Purposes"

Section 1693l-1 is part of the Electronic Funds Transfers Act, the "primary objective" of which is the "provision of individual consumer rights." 15 U.S.C. § 1693(b); *see* 12 C.F.R. § 205.1(b) (2016).

Congress gave the Consumer Financial Protection Bureau ("Bureau") the authority to "prescribe rules to carry out the purposes" of the EFTA. 15 U.S.C. § 1693b(a)(1). In December 2011, the Bureau restated the implementing Regulation E, originally promulgated by the Federal Reserve Board and found in section 205

1   of Title 12 of the Code of Federal Regulations. 12 C.F.R. § 1005.1 (76 Fed. Reg.

2   81020) (December 27, 2011). "If Congress has explicitly left a gap for the agency

3   to fill, there is an express delegation of authority to the agency to elucidate a

4   specific provision of the statute by regulation [and] [s]uch legislative regulations

5   are given controlling weight unless they are arbitrary, capricious, or manifestly

6   contrary to the statute." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-

7   844 (1984). Regulation E defines a "gift certificate" as "a card, code, or other

8   device" that is "[i]ssued on a prepaid basis *primarily for personal, family, or*

9   *household purposes….*" 12 C.F.R. § 205.20(a)(1) (emphasis added). If a person

10   buys a card, code or device "to purchase […] business-related items," it is not a

11   "gift certificate" under the EFTA. 12 C.F.R. § 205, Supp. I ¶ (20)(a).5.ii (staff

12   interpretation).

13        Plaintiff claims that she purchased credits for "personal use." Complaint ¶ 8.

14   However, she must allege more than that—she must state facts that show stock

15   photography licenses are "*primarily*" used for "personal, family, or household

16   purposes." *See, e.g., Leonard,* 2016 U.S. App. LEXIS 15565 *2-3 (describing the

17   types of licenses involved in plaintiff's stock photography).

18   **E.      Plaintiff Has Not Alleged The "Credits" Have A Monetary Value**

19        Plaintiff's claims under section 1693l-1 are similarly unsuccessful because

20   she does not allege facts to show that the credits have a monetary value. The

21   statute provides that a "gift certificate" is "issued in a specified amount that may

22   not be increased or reloaded." 15 U.S.C. § 1693l-1(a)(2)(B)(ii); *see* 12 C.F.R. §

23   205.20(a)(1). The Official Staff Interpretations of the EFTA explain: "[I]f the

24   prepaid card does not have a monetary value, and therefore is not 'issued in a

25   specific amount,' the card does not meet the definitions of 'gift certificate,' 'store

26   gift card,' or 'general-use prepaid card' in § 205.20(a)." 12 C.F.R. § 205, Supp. I ¶

27   20(b)(6).2.i; *see id*. at ¶ 20(a)-(3); *see Hughes v. CorePower Yoga, LLC*, 2013

28   U.S.Dist. LEXIS 44127, *18 (D. Minn. 2013) (dismissing EFTA claim under

1  section 1693l-1, finding that yoga "Class Packs" were not gift cards because they

2  were "redeemable for yoga classes and not for a 'specific amount,' such as a $50

3  spa card").

4  **F.   Plaintiff Cannot Bring A Claim Under California Civil Code § 1749.5**

5       Plaintiff's second claim for relief seeks injunctive relief, restitution, refunds,

6  reinstatements of credit, and attorneys' fees and costs for purported violations of

7  California Civil Code section 1749.5. Yet there is no private right of action under

8  section 1749.5 et seq. The second claim for relief should be dismissed.

9  **G.   The Credits Are Not Unlawful or Unfair Under California Business &**

10       **Professions Code § 17200**

11      California Business and Professions Code section 17200 defines "unfair

12  competition" as "any unlawful, unfair or fraudulent business act or practice …." A

13  plaintiff alleging unfair business practices under the unfair competition statutes

14  "must state with reasonable particularity the facts supporting the statutory elements

15  of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619

16  (1993). "A defendant cannot be liable under § 17200 for committing 'unlawful

17  business practices' without having violated another law." *Ingels v. Westwood One*

18  *Broadcasting Services, Inc.*, 129 Cal.App.4th 1050, 1060 (2005); *see Rubio v.*

19  *Capital One Bank (USA), N.A.,* 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008)

20  (dismissing UCL claim where predicate claim failed).

21      Plaintiff's section 17200 allegation is primarily based on the purported

22  violations of the federal and California "gift certificate" statutes. Complaint ¶¶ 70-

23  72, 76. For the reasons set forth above, the credits are not "gift certificates" under

24  the federal statute.

25      Nor are the credits "gift certificates" under California law. California Civil

26  Code section 1749.5(a)(1) provides that it is "unlawful for any persons or entity to

27  sell a gift certificate to a purchaser that contains […] [a]n expiration date." Plaintiff

28  misstates the law when she claims that "gift certificates" are defined under section

1749.6. Complaint ¶¶ 29, 61. That section relates to the status of gift certificates in bankruptcy proceedings. Cal. Civ. Code § 1749.6 (section titled "Gift certificate of trust property of beneficiary and must be honored by issuer in bankruptcy").

The statute purports to define "gift certificate" in section 1749.45 (emphasis added):

> As used in this title "gift certificate" includes gift cards, but does not include any card usable with multiple sellers of **goods or services**, provided the expiration date, if any, is printed on the card. This exemption does not apply to a gift card usable only with affiliated sellers of **goods or services**.

As with the federal statute, the California statute refers to the ability of the gift certificate to be used with "sellers of goods or services." For the same reasons set forth above, stock photography licenses are not "goods or services."

While the state statute states that a "gift certificate" includes "gift cards," it fails to define the actual term "gift certificate." "To ascertain the common meaning of a word, 'a court typically looks to dictionaries.'" *Arocho v. Cal. Fair Plan Ins. Co.*, 134 Cal.App.4th 461, 466 (2005) (citation omitted); *see Reynolds v. Philip Morris USA, Inc.*, 332 F. App'x. 397, 398 (9th Cir. 2009) (relying on dictionary definition for finding that proofs of purchase on cigarette packs were not "gift certificates" under California law) (gift certificate defined as "certificate, usually presented as a gift, that entitles the recipient to select merchandise of an indicated cash value at a commercial establishment"). Black's Law dictionary defines "gift" as: "A voluntary transfer of property to another made gratuitously and without consideration." *Gift*, Black's Law Dictionary, 5th ed. 1979.

The Ninth Circuit's decision in *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934 (9th Cir. 2014) is instructive. In *Resnick*, the court held that "gift cards" issued as part of a class settlement were not "coupons." *Id.* at 949. Because the Class Action Fairness Act did not define "coupon," the court looked to the legislative history and district court decisions. *Id.* at 950. In

1  distinguishing gift cards from coupons, the court emphasized the characteristics of

2  gift cards, including that they are "freely transferrable." *Id.* at 951 (citing *Reibstein*

3  *v. Rite Aid Corp.,* 761 F.Supp.2d 241, 255-256 (E.D. Pa. 2011); *Fernandez v.*

4  *Victoria's Secret Stores, LLC,* No. CV-06-04149, 2008 U.S. Dist. LEXIS 123546,

5  *2 (C.D. Cal. Jul. 21, 2008); *Petersen v. Lowe's HIW, Inc.,* Nos. C 11-01996 RS, C

6  11-03231 RS, C 11-02193 RS, 2012 U.S. Dist. LEXIS 123018 (N.D. Cal. Aug. 24,

7  2012); *In re Bisphenol-A (BPA Polycarbonate Plastic Prods. Liab. Litig.*, MDL

8  No. 1967, Master Case No. 08-1967, 2011 U.S. Dist. LEXIS 50139, *2-4 (W.D.

9  Mo. 2011)). The court held: "Similar to the gift cards in these cases, the Walmart

10  gift cards can be used for any products on Walmart.com, ***are freely transferrable***

11  (though they cannot be resold on a secondary market) and do not expire, and do

12  not require consumers to spend their own money." *Id.* at 951 (emphasis added).

13  This analysis which emphasizes transferability comports with the definition of

14  "gift" and "gift certificate" above.

15      Similarly, in *Waul v. Circuit City Stores*, No. A101414/A101792, 2004 Cal.

16  App. Unpub. LEXIS 6391, *10-11 (Cal. App. 1st Dist. July 9, 2004), the court held

17  that "merchandise cards" offered by Circuit City which expired after 90 days were

18  not gift cards under California Civil Code § 1749.5.[1] The court looked to the

19  legislative history of Assembly Bill No. 2466 (1995-1996 Reg. Session) and

20  concluded: "[I]t is clear that the section contemplates a 'gift'; i.e., a certificate or

21  card purchased or obtained by someone for the purpose of giving it to someone

22  else." *Id.* at *1; *see Reynolds,* 332 Fed. Appx. at *2 ("The ordinary meaning of

23  'gift certificates' does not cover Marlboro Miles because Marlboro miles are ***not***

24

_____

25  [1] While *Waul* is an unpublished decision and not precedential, the Ninth Circuit has
    held that courts may consider the reasoning in such instances. *Beeman v. Anthem*
26  *Prescription Mgmt., LLC,* 652 F.3d 1085, 1093 (9th Cir. 2011) ("[W]e are not
    precluded from considering these unpublished decisions as a possible reflection of
27  California Law, although they have no precedential value"), *vacated on other*
    *grounds,* 741 F.3d 29 (9th Cir. 2014); *Emplrs Ins. Of Wausau v. Granite State Ins.*
28  *Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider unpublished
    state decisions, even though such opinions have no precedential value.").

1   ***typically given as gifts,*** are not certificates, and state no cash value") (emphasis

2   added).

3       Plaintiff does not plead facts that establish that the "credits" at issue were

4   capable of being transferred to another person—i.e., that they were gift-able. This

5   is critical. If the credits cannot be transferred or "gifted" they cannot be "gift

6   certificates."

7       Plaintiff's claims of "unfair" business practices under section 17200 also

8   fail. Courts have differed as to what test should be applied to determine unfairness

9   in section 17200 cases. *See, e.g., Camacho v. Automobile Club of Southern*

10   *California,* 142 Cal.App.4th 1394, 1403 (2006) ("(1) The consumer injury must be

11   substantial; (2) the injury must not be outweighed by any countervailing benefits to

12   consumers or competition; and (3) it must be an injury that consumers themselves

13   could not reasonably have avoided."); *Progressive West Ins. Co. v. Superior Court*,

14   135 Cal.App.4th 263, 286 (2005) (defining "unfair business practices" as

15   "immoral, unethical, oppressive, unscrupulous or substantially injurious to

16   consumers") (citation omitted); *Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144,

17   1166-1167 (2000) (adopting standard in *Cel-Tech Communications, Inc., v. Los*

18   *Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 186 (Cal. 1999) that "unfairness"

19   under section 17200 must be "tethered to some legislatively declared policy").

20       Plaintiff's primary complaint against the expiration of the credits is that

21   there is "no need to expire the credits after just one year." Complaint ¶ 73. What

22   Plaintiff believes is "unfair" is that expiration dates exist at all. Yet expiration

23   dates are prevalent in the market place. A Disneyland annual pass expires after one

24   year. Stock options expire. Intellectual property rights like patents and copyrights

25   expire. Even The CARD Act itself allows an expiration date after five years. There

26   is nothing inherently "unfair" about expiration dates, and Plaintiff must plead

27   something more to establish her claim.

28       Plaintiff also states that even if the consumer has knowledge of the

expiration date, it would still be "unfair" for the credits to expire where the consumer has "no current need for purchase of photos/images." *Id.* Again, whether or not someone feels like licensing additional photographs does not make the expiration of the credits "unfair." As with the yoga classes in *Hughes,* 2013 U.S. Dist. LEXIS 44127 at *18, one may not need (or want) to attend the tenth yoga class before the 10-class package expires, but that is a choice one makes and is not "unfair" under the law.

As to Plaintiff's remaining allegations, she states that the credit expiration was not "adequately disclosed," but provides no facts to support this. Plaintiff does not describe the licensing agreement, the website's terms of use, or anything else to identify the website or its disclosures. Similarly, Plaintiff's claim of "fraudulent business practices" through "misleading and partial statements about 123RF credits" is hopelessly vague. Plaintiff does not identify any such statements and does not claim to have relied upon them.

**H.      Plaintiff Does Not State A Claim Under California Business & Professions Code § 17500**

Business and Professions Code section 17500 prohibits false or misleading advertising. Cal. Bus. & Prof. Code § 17500. While a plaintiff "need not plead the exact language of every deceptive statement," the complaint must "describe a scheme to mislead customers, and allege that each misrepresentation to each customer confirms that scheme." *Committee on Children's Television, Inc. v. General Foods Corp.,* 35 Cal.3d 197, 212-213 (Cal. 1983). Plaintiff has not pled any such facts. All Plaintiff has alleged is that the expiration dates on the credits she purchased violated the "gift certificate" statutes and were unfair because she lost unused credits. There is no scheme or misrepresentation. Plaintiff never alleges that she was told the credits would not expire. To the contrary, Plaintiff knew as early as November 9, 2013 when her first credit expired that the credits had expiration dates, and yet she continued to purchase credits on July 23, 2014 and

July 28, 2014. Complaint ¶ 9.

**I.     Plaintiff Does Not State A Claim Under California Civil Code Section 1750 et seq.**

Plaintiff references "goods and services" in her fifth claim for relief under the Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750. Plaintiff's claim rests on the assertion that the "credits" are used for the "sale of goods or services" as defined in California Civil Code section 1761(a) and (b). Complaint ¶ 93. Plaintiff argues that she is a "consumer" as defined by section 1761(d).

Plaintiff is not a "consumer" under the CLRA because she does not allege facts showing that she was an individual "who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). "Goods" are "tangible chattels bought or leased for use *primarily for personal, family, or household purposes*, including certificates or coupons exchangeable for these goods…." Cal. Civ. Code § 1761(a) (emphasis added). For the same reasons set forth above, Plaintiff has not alleged that her purchases of stock photography licenses are "goods." "Services" are "work, labor, and services for *other than a commercial or business use*, including services furnished in connection with the sale or repair of goods." *Id.* at § 1761(b) (emphasis added). As previously stated above, Plaintiff has not and cannot allege that stock photography licenses are "services." Additionally, Plaintiff has not pled any facts that the purpose of licensing stock photography is for something other than "commercial or business use." Given the description of stock photography in *Alaska Stock, LLC*, 747 F.3d at 676 and the purpose of licensing stock photography being to avoid copyright infringement, it seems unlikely that Plaintiff can allege facts that stock photography licenses are not for commercial or business use – let alone that they are services in the first place.

In *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1488 (2006)

1  (citing Cal. Civ. Code § 1770(a)), the court held that the defendant's actions were

2  not undertaken "in a transaction intended to result or which results in the sale or

3  lease of goods or services." Instead, the defendant's action were "undertaken in

4  transactions in the sale of real property." *Id.* The court upheld the trial court's

5  ruling dismissing the CLRA claim without leave to amend. *Id.* Similarly, Plaintiff

6  has not alleged any facts that the "credits" were used for the "sale or lease of goods

7  or services," but instead that they were used in transactions of acquiring limited

8  intellectual property rights.

9  Plaintiff's allegation that there is an "unconscionable provision in the

10  contract" also fails because Plaintiff has not identified any contract with 123RF

11  LLC (or anyone else) and has not attached a contract to the Complaint.

12  The Consumer Legal Remedies Act section 1782(a) requires that at least

13  thirty days before commencing an action for damages, the plaintiff must send a

14  written notice and demand. If a party files an action for injunctive relief, an

15  amendment may be brought not less than 30 days after the commencement of an

16  action to request damages. Cal. Civ. Code § 1782(d). The amendment is permitted

17  because the filing of the request for injunctive relief has the same effect as the

18  written notice. In this case, Plaintiff never sent written notice to 123RF LLC

19  regarding its claim and filed a complaint requesting injunctive relief *and* damages.

20  Complaint ¶ 98. This is not allowed. Plaintiff's request for damages in this claim

21  for relief should be dismissed, or alternatively stricken.

22  The CLRA also carries a statute of limitations period of three years "from

23  the date of the commission of such method, act, or practice." Cal. Civ. Code §

24  1783. This means that Plaintiff's November 9, 2012 purchase is time-barred.

25  **J.    Plaintiff's Claim for Relief for Unjust Enrichment Fails**

26  "Unjust enrichment is not a claim for relief, however, or even a remedy, but

27  rather a general principle, underlying various legal doctrines and remedies."

28  *McBride v. Boughton*, 123 Cal.App.4th 379, 387 (2004) (quotations and citations

omitted) (the court disregarded the title and treated the "unjust enrichment" claim as a request for restitution); *see McKell*, 142 Cal.App.4th at 1490 ("There is no claim for relief for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust" (citing Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, §§ 1015, 1016, pp.1104-1105)). The doctrine of equitable unjust enrichment applies "where the plaintiffs, while having no enforceable contract, nonetheless have conferred a benefit on the defendant to which the defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value." *Hernandez v. Lopez*, 180 Cal.App.4th 932, 938 (2009).

Because of the lack of facts in the Complaint, the Court would be required to speculate as to the basis of this claim for relief. Again, Plaintiff has not alleged any contractual relationship (or lack of) with 123RF LLC. At the same time, Plaintiff does reference "unconscionable" terms in a contract in her CLRA claim for relief. Under these facts, it is impossible to surmise the basis of this claim for relief. What appears to be the cause is that Plaintiff simply does not like that expiration dates exist. However, as explained above, expiration dates are not per se illegal or unjust. Plaintiff never alleges that she could not have used all of her credits to license stock photography prior to their expiration dates. *See Davis v. HSBC Bank Nev., N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012) (rejecting UCL and FTCA claims where plaintiff objected to an annual credit card fee, and noting that plaintiff could have avoided the fee by closing his account).

**K.     Plaintiff's First Claim for Relief Is Time-Barred**

In addition to the fact that Plaintiff has not and cannot allege facts that 123RF LLC ever sold anything to her, the first claim for relief for violations of 15 U.S.C. § 1693 is also time-barred.

Section 1693l-1 prohibits the sale of "general use prepaid cards, gift

certificates, and store gift cards," bearing an expiration date of less than five years, among other things. 15 U.S.C. § 1693. Plaintiff's action is subject to the one year statute of limitations set forth in § 1693m(g): "Without regard to the amount in controversy, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." "A statute of limitations defense, if 'apparent from the face of the complaint,' may properly be raised in a motion to dismiss." *Seven Arts Filmed Entm't Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013).

Plaintiff alleges that she made four purchases of credits that contained expiration dates in violation of 15 U.S.C. § 1693l-1(c). Complaint ¶ 9. The last purchase Plaintiff made was on July 28, 2014. *Id.* To comply with section 1693m(g), Plaintiff had to file her Complaint by July 28, 2015. Plaintiff filed her Complaint on June 10, 2016 – almost a year after the statutory deadline. Plaintiff's First Claim for Relief should be dismissed as time-barred.

"[A]s a 'standard rule,' the statute of limitations begins to run 'when the plaintiff has a complete and present cause of action' and thus 'can file suit and obtain relief.'" *Wike v. Vertrue, Inc.*, 566 F.3d 590 (6th Cir. 2009) (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)). The statute prohibits the "sale" of gift cards with expiration dates of less than five years. 15 U.S.C. § 1693l-1(c). It is the sale, not whether the gift card actually expires that triggers the statutory provisions. Therefore, the statute of limitations runs from the date of sale—not the expiration date.

Plaintiff will likely argue that the "date of the occurrence of the violation" should be calculated from the time of the expiration of the credits or some other unknown time under the discovery rule. Even if the Court were to consider the discovery rule, the facts show Plaintiff's claim would still be time-barred. Plaintiff

1  states she made four purchases of credits: "One (1) credit she bought on November

2  9, 2012 was expired by 123RF 1 year later, on November 9, 2013." Complaint ¶

3  37. Even after Plaintiff's credit expired, she made additional purchases on July 23,

4  2014 and July 28, 2014. *Id.* Thus, even with the discovery rule, Plaintiff

5  "discovered" the expiration dates prior to her last two purchases. Therefore, the

6  one-year statute of limitations should still begin to run on July 28, 2014.

7       Under the discovery rule, a plaintiff must exercise a certain amount of

8  personal responsibility and cannot claim ignorance simply to extend the statute of

9  limitations. "In other words, the discovery rule will postpone the running of a

10  statute of limitations only until the time when a plaintiff, through exercise of due

11  diligence, should have discovered the basis for the cause of action." *Harvey v.*

12  *Google Inc.*, No. 15-cv-03590, 2015 U.S. Dist. LEXIS 170381, *6 (N.D. Cal. Dec.

13  21, 2015) (citing *Unigard Sec. Ins. Co. v. Kansas Gen. Ins. Co.*, No. 93-35008,

14  1994 U.S. App. LEXIS 35914, *5 (9th Cir. Dec. 7, 1994)). In *Harvey,* the court

15  refused to extend the discovery rule where plaintiff had unauthorized charges on

16  her bank and did not notice until months later. *Id.* at *2-3. The court stated that if

17  plaintiff had exercised due diligence, she would have discovered the charges

18  "either by looking at her Google account or even more simply, looking at her bank

19  statements." *Id.* at *12. Even where the court applies the discovery rule, it still

20  requires a modicum of diligence on the part of the plaintiff. In *Park v. Webloyalty,*

21  No. 12cv1380, 2014 U.S. Dist. LEXIS 138340, *14 (S.D. Cal. Sept. 29, 2014),

22  there was a factual question as to whether the plaintiff knowingly signed up for a

23  website subscription service, and the court held that the section 1693m(g) statute of

24  limitations began to run when the plaintiff received his first bank statement

25  showing the unauthorized charge on his account—regardless of whether he

26  actually looked at it.

27       Under the facts as stated in the Complaint, if Plaintiff exercised due

28  diligence she would have discovered the expiration of the credits at least by

**NOTICE OF MOTION AND
MOTION TO DISMISS**

November 9, 2013 when her credit expired. Thus, Plaintiff federal "gift certificate" claims are time-barred.

## III.

## CONCLUSION

Plaintiff has sued the wrong entity and dismissal of the Complaint as to 123RF LLC is warranted under Rule 12(b)(1) and 12(b)(6). As to Plaintiff's individual causes of action, her failure to plead sufficient facts also justifies dismissal of the Complaint under Rule 12(b)(6).

DATED: September 12, 2016          CROCKETT & ASSOCIATES


By   */s/Courtney E. Vaudreuil*
Robert D. Crockett
Courtney E. Vaudreuil
Attorneys for 123RF LLC

20

NOTICE OF MOTION AND
MOTION TO DISMISS