1 | **UMBERG ZIPSER LLP**
Dean J. Zipser (SBN 94680)
2 | Carole E. Reagan (SBN 162674)
dzipser@umbergzipser.com
3 | creagan@umbergzipser.com
1920 Main Street, Suite 750
4 | Irvine, CA 92614
Telephone: (949) 679-0052
5 | Facsimile: (949) 679-0461

6 | Attorneys for Defendants 123RF, LLC
and 123RF Limited

7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 |

11 | TAMARA LEE TAYLOR, an individual, and others similarly | Case No.: 2:16-cv-04129-SVW (FFMx)
12 | situated, | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**
13 | Plaintiff,
14 | vs. | [Declaration of Carole E. Reagan filed herewith]
15 | 123RF LLC, a California Limited Liability Company; 123RF Limited, a Hong Kong Company; and DOES
16 | 1-10, inclusive, | Date: August 7, 2017
17 | Defendants. | Time: 1:30 p.m.
Ctrm: Hon. Stephen V. Wilson; 10A
18 |

19 | | Complaint Filed: June 10, 2016
20 |

21 |

22 |

23 | Defendants 123RF, LLC and 123RF Limited (collectively, "Defendants" or

24 | "123RF") reply to Plaintiff's Opposition to 123RF's Motion to Dismiss (the

25 | "Opposition").

26 |

27 |

28 | {145243.2}

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.   INTRODUCTION.............................................................................1

II.  ARGUMENT ..................................................................................1

   A.   Plaintiff Does Not and Cannot Allege a Claim under the
       California Gift Certificate Statute (Civil Code Section 1749.5)...........1

     1.   Plaintiff Provides No Grounds for an Unconventional
        Interpretation of "Gift Certificate"........................................1

     2.   Plaintiff's Proposed Interpretation of the Gift Certificate
        Statute Would Have Wide-Ranging Negative Economic
        Effects, Without Any Discernible Legislative Intent ...........................7

   B.   Plaintiff Does Not State a Claim Under Section 17200 or 17500.......10

     1.   Plaintiff Fails to Plead Procedural or Substantive
        Unconscionability ...........................................................10

     2.   Reliance and Standing Are Not Pled and Cannot Be Inferred.............11

     3.   The FAC Fails to Meet Federal Pleading Standards for
        Fraudulent Practices under the UCL and FAL ...................................14

   C.   Plaintiff's Unjust Enrichment Claim Fails...........................................16

III. CONCLUSION ...............................................................................17

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{145243.2}

i

Case No.: 2:16-cv-04129-SVW (FFMx)
REPLY MEMORANDUM ISO MOTION TO DISMISS FAC

# TABLE OF AUTHORITIES

## CASES

*Blakemore v. Superior Court,*
  129 Cal. App. 4th 36 (2005) ............................................................... 15

*City of Clinton v. Pilgrim's Pride Corp.,*
  632 F.3d 148 (5th Cir. 2010) .............................................................. 13

*Collins v. eMachines, Inc.,*
  202 Cal. App. 4th 249 (2011) ............................................................. 16

*Daugherty v. Am. Honda Motor Co.,*
  144 Cal. App. 4th 824, 51 Cal.Rptr.3d 118 (2006) ........................... 15

*Durrell v. Sharp Healthcare,*
  183 Cal. App. 4th 1350 (2010) ........................................................... 16

*Gomez v. Wells Fargo Home Mortg.,*
  No. C 11-01725, 2011 WL 5834949 (N.D. Cal. Nov. 21, 2011) ..................... 14

*Hahn vs. Massage Envy,*
  No. 12cv153, 2014 WL 5100220 (S.D. Cal. Sept. 25, 2014) ......................... 11

*In re ConAgra Foods,*
  908 F. Supp. 2d 1090 (C.D. Cal. 2012) ............................................. 16

*In re Seagate Technology LLC Litigation,*
  --F. Supp. 3d--, No. 16-cv-0523, 2017 WL 528398 (N.D. Cal. Feb.
  9, 2017) ................................................................................................ 15

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection
  HDTV Television Litig.,*
  758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................. 14

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.,*
  578 F. Supp. 2d 1229 (C.D. Cal. 2008) ............................................ 17

*Kane v. Chobani, Inc.,*
  973 F. Supp. 2d 1120 (N.D. Cal. 2014),
  *vacated on other grounds,* 645 F. Appx. 593 (9th Cir. 2016) ......................... 14

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) ............................................................ 15

*McAdams v. Monier, Inc.,*
  182 Cal. App. 4th 174 (2010) ............................................................. 16

*Morris v. Redwood Empire Bancorp,*
  128 Cal. App. 4th 1305 (2005) ........................................................... 11

*Otto v. Abbott Laboratories, Inc.,*
  No. CV 12-1411-SVW, 2013 WL 12132064 (C.D. Cal 2013) ................. 13, 14

*Pastoria v. Nationwide Ins.,*
  112 Cal. App. 4th 1490 (2003) ........................................................... 16

*Reynolds v. Philip Morris USA, Inc.,*
  332 F. Appx. 397 (9th Cir. 2009) ......................................................... 5

*Richards v. Harper,*
  864 F.2d 85 (9th Cir. 1988) ................................................................ 13

{145243.2}

ii

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989) ................................................................ 6

*SMC Promotions, Inv. v. SMC Promotions*,
   355 F. Supp. 2d 1127 (C.D. Cal. 2005) ................................................... 7

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) .......................................................................... 12

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ................................................................ 12

*Walnut Producers of California v. Diamond Foods, Inc.*,
   187 Cal. App. 4th 634 (2010) ............................................................... 10

*Warth v. Seldin*,
   422 U.S. 490 (1975) .............................................................................. 12

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .............................................................. 14

*Wilson v. Birnberg*,
   667 F.3d 591 (5th Cir. 2012) ................................................................ 13

*Wilson v. Hewlett–Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) .............................................................. 15

**STATUTES**

Cal. Civ. Code §1747.02 .............................................................................. 4

Cal. Civ. Code §1748.30 .............................................................................. 4

Cal. Civ. Code §1749.45 .............................................................................. 4

Cal. Civ. Code §1749.5 ................................................................................ 1

Cal. Civ. Code §1749.6 ................................................................................ 3

Cal. Civ. Code §1749.61 .............................................................................. 4

Cal. Civ. Code §1670.5 .............................................................................. 11

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{145243.2}                                          iii

Case No.:  2:16-cv-04129-SVW (FFMx)
REPLY MEMORANDUM ISO MOTION TO DISMISS FAC

## I.     <u>INTRODUCTION</u>

Plaintiff admits at the outset that she is asking the Court to apply an "unconventional" definition of the term "gift certificate."  (Opp., at 2.)  Yet plaintiff provides the Court with no basis to do so.  Moreover, adoption of Plaintiff's unconventional and sweeping interpretation of the gift certificate statute would render illegal many common business models – a result neither contemplated nor intended by the Legislature.

On her UCL and FAL claims, Plaintiff asks the Court to "infer" that she has standing based on what is *not* said in the First Amended Complaint.  This the Court cannot do.  Nor should it accept bare conclusory allegations that do not remotely meet the standards of Rule 9 of the Federal Rules of Civil Procedure.

In short, Plaintiff has not alleged any cognizable claim.  She did not buy a "gift certificate," nor was she the victim of any unconscionable or unfair conduct. She purchased a structured plan for the licensing of copyrighted photographs and other visual content for use in derivative works.  And after her first batch of credits expired, she continued to purchase more credits and download more photographs. She never states that she had an expectation that the credits would not expire, or that she would not have bought them if she understood differently.  She points to no misleading advertisement or other misrepresentation upon which she relied.  She alleges no contract at all, much less an unconscionable one.  Accordingly, and as further set forth below and in 123RF's moving papers, the First Amended Complaint ("FAC") should be dismissed.

## II.    <u>ARGUMENT</u>

### A.     <u>Plaintiff Does Not and Cannot Allege a Claim under the California Gift Certificate Statute (Civil Code Section 1749.5)</u>

#### 1.     <u>Plaintiff Provides No Grounds for an Unconventional Interpretation of "Gift Certificate"</u>

Plaintiff claims that 123RF proposes a "hyper technical definition of gift

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE
{145243.2}                                    1
Case No.:  2:16-cv-04129-SVW (FFMx)
REPLY MEMORANDUM ISO MOTION TO DISMISS FAC

certificate." (Opp., at 5.)  To the contrary, in its moving papers, 123RF argued that the term "gift certificate" should be given its <u>ordinary meaning</u>, and this conclusion was grounded in (1) the statutory language, (2) case law on statutory construction generally and on this statute specifically, (3) the dictionary definition of "gift certificate" (as referenced in case law, including by the 9th Circuit), and (4) legislative history.  (Mot., at 3-8.)  Plaintiff offers no authority to the contrary, nor any basis to discard this reasoned construction in favor of a reading of the gift certificate statute that would eliminate the word "gift" altogether, and render illegal in California any transaction through which a seller might reap an "unfair windfall" by virtue of a date restriction.

<u>First</u>, Plaintiff cites no case supporting her proposed interpretation.  Plaintiff distinguishes the *Reynolds* and *Waul* cases cited by 123RF by pointing to factual dissimilarities.  But 123RF did not cite these cases for their factual analysis.  Rather, these cases are instructive for their analysis of the meaning of the term "gift certificate" under Section 1749.5, considered in light of the statute's language, construction, and stated purpose, and for their conclusion that the term should be given its ordinary meaning.  (Mot., at 4.)  Plaintiff cites nothing to the contrary.

<u>Second</u>, Plaintiff focuses on the "purpose" of the gift certificate statute, referencing the same legislative history cited by 123RF.  (*See* Opp., at 4-5; Fernald Decl., Ex. B; *see also* 123RF's RJN, Ex. C.)  As set forth in 123RF's moving papers, the legislative history is exclusively focused on windfalls that accrue to retailers from expired gift cards as ordinarily defined.  (Mot., at 8.)  Indeed, Plaintiff also submits additional legislative history, which only reinforces the legislature's focus on the gift-giving context.  It begins, by way of explaining the background of the gift certificate statute, as follows:

> Over the last few years, gift cards have become increasingly popular as a means of gift-giving. Deloitte & Touche's 21[st] Anniversary Holiday Survey of retail spending and trends in

2006, found that gift cards had become the No. 1 gift choice,

with nearly 80% of those surveyed saying they planned to buy

at least one gift card during the holiday season. . . .

. . . This bill seeks to give California consumers the full value

of their gift cards. . . .

(Opp., Ex. B, p. 1.)  There is no discussion of anything other than gift-giving and gift cards in the legislative history.  Plaintiff sometimes tries to sneak in other terms like "pre-purchased credit" or "vouchers redeemable for something" or "vouchers *such as* gift cards and gift certificates" (Opp., at 5, 6, 8 [emphasis added]), but these terms are not found in the legislative history, or the statute itself or case law interpreting the statute.  They are entirely made-up by Plaintiff.  In fact, the only time the word "credit" is used in the legislative history is to distinguish a "store return credit" as "***something other than a gift certificate***."  (Fernald Decl., Ex. B, p. 5 [emphasis added].)  "Gift certificate" and "gift card" are the only terms used throughout the statute itself and the legislative history to describe the scope and purpose of the statute, and the focus is on the protection of the expectations of gift-givers and gift-recipients.  (Mot., at 8.)  Nothing indicates any broader analysis or concern, much less any intention to ban the use of expiration dates in all consumer transactions.

Third, while Plaintiff at one point agrees that the statute itself does not provide a "formal definition" of the term "gift certificate" (Opp., at 6), Plaintiff simultaneously continues to rely on Civil Code section 1749.6, arguing that it provides a "broad description" of what a gift certificate is.  (Opp., at 5, 6.)  This provision does no such thing.  It describes one legal attribute of a gift certificate – that it is value held in trust and thus non-dischargeable in bankruptcy – but this does not mean that *anything* that is "value held in trust" is somehow a gift certificate.  Plaintiff's argument is nonsensical.  (It is an attribute of dogs that they have four legs; it does not follow that everything with four legs is a dog.)  There is

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{145243.2}                                3

Case No.:  2:16-cv-04129-SVW (FFMx)
REPLY MEMORANDUM ISO MOTION TO DISMISS FAC

no basis to infer from this provision that the Legislature intended the "gift certificate statute" to apply to anything "held in trust."

Notably, where the Legislature has defined similar terms under other sections of the Civil Code (e.g., "debit card," "charge card," "credit card"), it has done so with particular language and in a particular format clearly indicating it is setting forth a definition.  For example:

- "For purposes of this title, the following definitions shall apply: (a) "Accepted debit card' means any debit card which the debit cardholder has requested and received …."  Civil Code § 1748.30;

- "For purposes of this title: … (c) 'Supermarket club card' means any card, plate, coupon book, or other single device existing for the purpose of being used from time to time …."  *Id.* § 1749.61;

- "For the purposes of this title: (a) 'Charge card' means any card, plate, or other credit device pursuant to which the charge card issuer extends credit to the charge cardholder, primarily for personal, family, or household purposes …."  *Id.* § 1748.21;

- "As used in this title: … (a) 'Credit card' means any card, plate, coupon book, or other single credit device …."  *Id.* § 1747.02.

Section 1749.6 does not follow this format at all, further demonstrating that the legislature did not intend that section to function as a definition.  By contrast, Section 1749.45, cited by 123RF as the only definition in the gift card statute, *does* follow this format: "As used in this title, 'gift certificate' includes gift cards. . ."  *Id.* §1749.45. [1]  As set forth in the Motion, the limited scope of this provision supports

---

[1] Plaintiff questions the source of title of Section 1749.45 as cited in the Motion.  (Opp., at 6, n. 2.)  The Lexis print-out of this statute with title "Gift Certificate Defined" is attached as Exhibit A to the Declaration of Carole Reagan, submitted herewith.  Legislative history submitted by Plaintiff further confirms that this provision is intended as a definition: "Current law **defines** "gift certificate" to include gift cards, except as specified"; 2003 amendment [which added 1749.45] "**defined** 'gift certificate' to include 'gift card'." (Fernald Decl., Ex. B, pp. 1, 6 [emphasis added].)

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{145243.2}                                        4

Case No.:  2:16-cv-04129-SVW (FFMx)
REPLY MEMORANDUM ISO MOTION TO DISMISS FAC

1   the conclusion that the legislature intended only to clarify that "gift certificate" and

2   "gift card" are interchangeable and that these terms shall otherwise be given their

3   plain, ordinary meaning.  (Mot., at 4-5.)

4       Fourth, Plaintiff sets up a strawman argument about gift-giving "intent,"

5   which is not argued anywhere in the Motion.  Indeed, 123RF specifically stated that

6   it does not take the position that a gift certificate must actually be given or intended

7   to be given as a gift in order to be covered by the statute.  (Mot., at 7.)  123RF

8   agrees that if one buys a gift card and keeps it rather than giving it away, it is still

9   subject to the statute's requirements.  (*Id.*)  But, as set forth in the Motion, no

10   matter what one does with it after purchase, it must ***be*** a gift certificate to begin

11   with.  That is, it must meet the ordinary definition of the term; i.e., a certificate

12   "usually presented as a gift," with a "stated cash value."  (Mot., at 5, 7; *Reynolds v.*

13   *Philip Morris USA, Inc*., 332 F. Appx. 397, 398 (9th Cir. 2009).)

14       Fifth, Plaintiff argues that "nowhere in the statute or the case law is there a

15   requirement that a gift certificate be capable of being given as a gift or be

16   transferrable."  (Opp., at 9.)  This is incorrect.  As set forth above and in the moving

17   papers, the case law (and the Legislative Counsel) concludes that the term "gift

18   certificate" in the statute should be given its ordinary meaning.  And that meaning

19   requires transferability.  Without transferability, a gift cannot ever be "presented as

20   a gift."  (Mot., at 4-7.)

21       In the Motion, 123RF demonstrated that, pursuant to the License Agreement

22   between 123RF and the user, 123RF credits are not transferable.   (Mot., at 6-7.)

23   Plaintiff concedes this point by arguing only that the account holder "is still free to

24   use those credits on behalf of another person."  (Opp., at 9.)  Using credits "on

25   behalf of" another person is not remotely the same thing as transferring the credits

26   themselves. Even if it were relevant, Plaintiff is wrong here too.  Using the credits

27   on behalf of someone else is expressly ***not*** allowed under the 123RF License

28   Agreement.  As set forth in License Agreement, a user is prohibited from (1)

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{145243.2}                                    5

Case No.:  2:16-cv-04129-SVW (FFMx)
REPLY MEMORANDUM ISO MOTION TO DISMISS FAC

transferring any rights to use licensed content to another person, or (2) sharing or distributing the content itself (unless it is incorporated into a separate derivative work ["Reproduced Licensed Work"], with controls to prevent any third parties from extracting the original licensed content):

| RESTRICTIONS | MEANING |
| --- | --- |
| Sublicense, sell or transfer any rights in License | • The rights in the License are personal to You<br>• You may not transfer any rights in this License to third parties without 123RF's consent |
| Sell, share, license, assign or distribute Standalone Content | • Conveyance of Content to third parties must always be in a Reproduced Licensed Work and never as Standalone Content<br>• You must ensure with adequate technological measures that Standalone Content may not be extracted/copied from Licensed Works by third parties |

(123RF's Request for Judicial Notice, Ex. D.)[2]  Thus, neither the credits themselves, nor any of the license rights in the photograph or other content purchased with the credits, may be transferred.  Indeed, to do so would violate the Federal Copyright Act.  *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087-88 (9th Cir. 1989) ("A licensee infringes the owner's copyright if its use exceeds the

_____

[2] Plaintiff mentions that 123RF credits can be accessed by multiple people through a corporate or multi-seat account.  Again, this in no way demonstrates transferability of the credits.  That multiple users may be authorized on a corporate account does not render the credits held by that account transferable to a third party.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

1  scope of its license."); *SMC Promotions, Inv. v. SMC Promotions*, 355 F. Supp. 2d

2  1127, 1131-32 (C.D. Cal. 2005) (licensee infringed copyright under Federal

3  Copyright Act by violating agreement providing that licensee "may not delegate or

4  authorize any other person" to use licensed photographs).

5          Finally, as to the stated cash value component of the standard definition of

6  "gift certificate," Plaintiff points only to her allegations that her credit packs were

7  "issued in specific amounts."  It is plain that this allegation does not refer to a dollar

8  amount, but rather to the number of credits in a pack (e.g., 20, 40, etc.).  Plaintiff

9  herself describes how credits are purchased in batches for various prices and the

10 credits are then used to license content worth varying amounts of credits.  (FAC, ¶¶

11 2, 11; Opp., at 11.)  Plaintiff cannot truthfully allege that the credits themselves

12 have a stated cash value.

13          Thus, 123RF credit packs are not "gift certificates" under the gift certificate

14 statute.

15              2.    Plaintiff's Proposed Interpretation of the Gift Certificate Statute

16                    Would Have Wide-Ranging Negative Economic Effects,

17                    Without Any Discernible Legislative Intent

18          Plaintiff argues that it would further the "public policy" of the gift card

19 statute to apply it to 123RF's credit plan because 123RF's only reason for imposing

20 an expiration date is to reap a windfall.  If it were not after a windfall, Plaintiff

21 suggests, 123RF would simply allow people to download photographs on an "as

22 needed basis."  (Opp., at 2.)  This assumption is fundamentally wrong and

23 demonstrates how Plaintiff's proposed interpretation of the gift card statute, taken

24 to its logical conclusion, would have far-ranging economic effects never

25 contemplated or intended by the Legislature.

26          First, there are many reasons to use a subscription or membership model, as

27 opposed to selling goods or services one at a time, on an "as needed" basis.  For

28 example, if a user had to pay separately to download every photo, there would be

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{145243.2}                                        7

Case No.:  2:16-cv-04129-SVW (FFMx)
REPLY MEMORANDUM ISO MOTION TO DISMISS FAC

greater transaction costs on both sides.  The process would take longer, be more cumbersome, and likely cost more.  By analogy, if gyms functioned on an "as needed" basis, then every time you wanted to go the gym, you would have to stop, maybe wait in line, and make a separate (and probably higher) payment.  Customer loyalty and repeat business are also important reasons to use this business model that have nothing to do with a "windfall."  Once a customer has bought a pack of credits, that customer will likely come to 123RF's website first whenever he needs a photograph and is far more likely to select a photo from there without shopping around other stock photo websites.  Using a similar analogy, if you have already bought a 10-pack of yoga classes from one particular yoga studio, that is almost certainly where you will go when you want to take a yoga class – as opposed to shopping around various other studios.  And once a customer has become accustomed to a particular gym, yoga studio, or stock photo website, they are more likely to continue using it, whether from affinity or just habit.  These are just a few of the business rationales behind all manner of membership or subscription services, and they have nothing to do with "windfalls" (and they are not present with gift cards).

As discussed in the Motion, many of these common types of membership and subscription services have expiration dates.  (Mot., at 7-8.)  Under Plaintiff's expansive interpretation of the statute, these types of transactions would all be "gift certificates" because they are "money exchanged in fixed amounts for the purpose of obtaining goods [or services] at a later date."  (Opp., at 2.)  They certainly would qualify as "value held in trust."  Plaintiff's only response is that gym memberships and Disneyland passes are different because they allow unlimited use within the restricted time period.  (Opp., at 11.)  Plaintiff does not explain how logically that distinction matters.  Under Plaintiff's proposed definition, limited versus unlimited use is not relevant.

Moreover, even if that *were* a relevant distinction, there are many other

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{145243.2}                                8

Case No.:  2:16-cv-04129-SVW (FFMx)
REPLY MEMORANDUM ISO MOTION TO DISMISS FAC

common consumer transactions that are not "unlimited" and that would become

illegal in California under Plaintiff's proposed interpretation of the gift card statute.

Disneyland, for example, offers 3-day passes that allow use on three days within a

two-week period, and must be used by the end of the calendar year.[3]  Likewise,

many ski resorts offer 3-of-5 or 4-of-7 day passes that must be used within the

designated five or seven day periods.[4]  Plenty of fitness memberships are not

unlimited, but may be only for a limited number of classes in a specific time

period.[5]  Under all of these models, if any or all of the goods or services are not

used, they are simply forfeited.

Consumers take the chance of forfeiture because these sorts of package plans

are generally significantly cheaper than a standard, single-use purchase.  There is a

benefit to consumers from a choice of different purchase options.  And that is

precisely the case here.  As Plaintiff stated, 123RF offers both a subscription plan

and credit pack plans, and the subscription plan is more expensive.  (Opp., at 11.)

The credit plan is an alternative that allows consumers who only want to license a

smaller or finite number of photographs the ability to do so at a more affordable

---

[3] *Theme Park Tickets*, DISNEY, https://disneyland.disney.go.com/tickets/?CMP=KNC-FY17_DLR_TRA_LOC_Search-365_Tickets|BR|G|4172215.DL.AM.01.01|&keyword_id=kwd-18338883023|dc|%2Bdisneyland%20passes|197307287957|b|5054:3|&s_kwcid=AL!5054!3!197307287957!b!!!!%2Bdisneyland%20passes&ef_id=V-K1qgAAAMXgKT8E:20170717213627:s (last accessed July 24, 2017) ("The first day of use of multi-day tickets must be on or before December 31, 2018. Multi-day tickets must be used within 13 days of first use or by January 13, 2019, whichever occurs first.")

[4] E.g., *Purchase Lift Tickets*, MAMMOTH RESORTS ,https://www.mammothmountain.com/winter/plan-a-vacation/book-a-trip/lift-tickets?opti_ca=402879062&opti_ag=18563291462&opti_ad=200679630644&opti_key=kwd-2667937101&gclid=Cj0KEQjwwLHLBRDEq9DQxK2I_p8BEiQA3UDVDkpJCN0uOkDf2wjzwL-4yXK6hGl6JuQIh5hjTYk9pDcaAgFt8P8HAQ&gclsrc=aw.ds (last accessed July 24, 2017) ("Reservations cannot be modified after 4PM on the day prior; cancellations at this point will result in a total forfeit of the cost. . . ..  Activity Change Credits are non-refundable and must be redeemed by the end of the 2016/17 winter season.")

[5] E.g., *Prices*, YOGAWORKS, http://www.yogaworks.com/location/pasadena/#membership (last accessed July 24, 2017) (Offering class package of 10 yoga classes for $195; "Class Packages expire 6 months from the date of purchase").

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

[145245.2]                                                         9

Case No.:  2:16-cv-04129-SVW (FFMx)
REPLY MEMORANDUM ISO MOTION TO DISMISS FAC

price.

Thus, subscription, membership, and package plans all offer potential benefits to both businesses and consumers.  Plaintiff's interpretation of the statute would render all of these transactions "gift certificates" and therefore illegal in California, to the detriment of consumer choice.  And it would do so without any indication that this wide-ranging policy change, with untold economic consequences, is what the Legislature intended.  There is no suggestion in the statute or the legislative history of a legislative desire or intent to "protect" consumers from ever making purchases that they might not use or to eliminate any transaction that could result in a "windfall" to a seller.[6]

### B.   Plaintiff Does Not State a Claim Under Section 17200 or 17500

#### 1.   Plaintiff Fails to Plead Procedural or Substantive Unconscionability

As set forth in the moving papers, in order to state a claim based on unconscionability, Plaintiff must allege the existence of a contract and allege facts supporting both procedural and substantive unconscionability.  (Mot., at 9.) Plaintiff alleges only she bought credit packs from 123RF and that the credits expired.  Even assuming that this suffices to plead the "legal effect" of a contract, the FAC contains no allegations supporting a claim of unconscionability.

Unconscionability has both a procedural and a substantive element.  *Walnut Producers of California v. Diamond Foods, Inc.*, 187 Cal. App. 4th 634, 645 (2010).  Procedural unconscionability relates to the manner in which the contract was negotiated and the circumstances of the parties at the time.  *Id.*  It typically involves oppression or surprise, such as the existence of a contract of adhesion, with inequality of bargaining strength between the parties or terms hidden in a

---

[6] Arguably, it is not a "windfall" at all.  With these transactions, the consumer gets a lower price in exchange for the self-assessed risk of partial or total loss -- in contrast to a gift card, which is simply a cash equivalent.

prolix printed form. *Id.* at 645-46. "Substantive unconscionability focuses on the terms of the agreement and whether those terms are so one-sided as to 'shock the conscience.'" *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1323-24 (2005). Plaintiff does not allege any such facts that would establish procedural or substantive unconscionability. Plaintiff's Opposition asserts that she "alleges that the one-year expiration policy is procedurally and substantively unconscionable in violation of California Civil Code 1670.5," and cites to FAC paragraph 79. This is false. Paragraph 79 includes a bare reference to section 1670.5, but does not refer, even in conclusory fashion, to procedural or substantive unconscionability, much less state any facts that would support such a claim.

Plaintiff also relies on *Hahn vs. Massage Envy,* No. 12cv153, 2014 WL 5100220 (S.D. Cal. Sept. 25, 2014). But *Hahn*, a summary judgment decision, does not address pleading requirements at all. Moreover, *Hahn* reiterates that unconscionability has both procedural and substantive elements, and the *Hahn* court analyzed the language of contract at issue and the circumstances of its formation in detail in order to determine unconscionability. *Id*. at *8-10.

Here, Plaintiff alleges nothing that, even if assumed to be true, would allow the Court to conclude that the contract between Plaintiff and 123RF was unconscionable. Plaintiff likely prefers not to allege how a purchase of credits from 123RF.com works, or what the Terms and Conditions look like or how they are disclosed, but she must do so. As pled, Plaintiff fails to state a UCL claim based on unconscionability. See *Morris v. Redwood Empire Bancorp*, 128 Cal. 4th at 1317-24 (2005) (claim dismissed where facts sufficient to establish procedural and substantive unconscionability not pled).

Having pled neither a claim under the gift card statute, nor unconscionability, Plaintiff states no claim under the "illegal" prong of Section 17200.

2.   <u>Reliance and Standing Are Not Pled and Cannot Be Inferred</u>

Plaintiff does not dispute that, as demonstrated in the Motion, actual reliance

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{145243.2}                                        11

Case No.:  2:16-cv-04129-SVW (FFMx)
REPLY MEMORANDUM ISO MOTION TO DISMISS FAC

1   is a requirement for Article III standing and a required element of a UCL/FAL

2   claim.  (Mot., at 10.)  Nor does Plaintiff dispute that to plead reliance, she must

3   allege that she made a purchase she would not have if she was aware of the

4   expiration policy.  (*Id*. at 10-11.)   And Plaintiff does not dispute that if she was

5   aware of the expiration and continued to purchase additional credits, that

6   knowledge would defeat her standing to bring a UCL or FAL claim.  (*Id*. at 11-12.)

7        Plaintiff's only response is that, although the FAC admittedly states that one

8   of her credits expired before she bought additional credits, it does not expressly say

9   that Plaintiff *knew* the credit had expired.  She then asks the Court to infer and

10   assume that she did *not* know it had expired.

11        The Court is not required to accept unwarranted deductions of fact or make

12   unreasonable inferences (*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

13   (9th Cir. 2001)), and this is not a reasonable inference.  It is not reasonable to

14   assume that Plaintiff did not pay attention to her account.  Indeed, the fact that she

15   purchased more credits on November 7, 2013 – *two days before* her first batch of

16   credits were set to expire – indicates that she was well aware of the impending

17   expiration and the need to supplement her account.  (FAC, ¶ 11.)   The Court

18   should not read into the complaint an allegation that does not exist merely because

19   it is *conceivably possible*.

20        More importantly, courts cannot infer Article III standing requirements, nor

21   essential elements of a claim.  "The plaintiff, as the party invoking federal

22   jurisdiction, **bears the burden of establishing" the three elements going to**

23   **standing**: that it "(1) suffered an injury in fact, (2) that is fairly traceable to the

24   challenged conduct of the defendant, and (3) that is likely to be redressed by a

25   favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)

26   (emphasis added).  When "a case is at the pleading stage, **the plaintiff must**

27   '**clearly . . . allege facts demonstrating' each element." *Id.* (citing *Warth v.*

28   *Seldin,* 422 U.S. 490, 518 (1975) (emphasis added)); *see also Warth*, 422 U.S. at

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE
{145243.2}
12
Case No.:  2:16-cv-04129-SVW (FFMx)
REPLY MEMORANDUM ISO MOTION TO DISMISS FAC

506 (plaintiff did not satisfy standing because "the facts alleged fail[ed] to support an actionable causal relationship between the [defendant's] zoning practices and petitioners' asserted injury," and plaintiff must allege "concrete facts demonstrating that the challenged practices harm him"); *Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988) ("**We do not supply essential elements of a claim that were not initially pled**.") (emphasis added); *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) ("We make all inferences in a manner favorable to the plaintiff, 'but **plaintiffs must allege facts that support the elements of the cause of action** in order to make out a valid claim.'") (quoting *City of Clinton v. Pilgrim's Pride Corp.,* 632 F.3d 148, 152–53 (5th Cir. 2010)) (emphasis added).

Here, Plaintiff alleges *no facts* establishing the actionable causal relationship. Not only does she not allege she was unaware of expiration policy – either before she bought the first tranche of credits or thereafter – she does not state that she had any belief or expectation that the credits would *not* expire.  She does not allege that she would not have purchased the credits if she had known they would expire.  She alleges no facts whatsoever establishing reliance on 123RF's alleged non-disclosure.  In the Opposition, Plaintiff states that "[u]nbeknownst to her" the credits expired, and that "Plaintiff didn't notice that one of her credits expired before she purchased another credit pack" (Opp., at 1, 3, 14),  but she provides no citation to the FAC because these allegations are not in there.[7]  Accordingly, the FAC does not establish Plaintiff's standing to bring a UCL or FAL claim.

Finally, *Otto v. Abbott Laboratories, Inc.*, No. CV 12-1411-SVW, 2013 WL

---

[7] The only reference to reliance anywhere in the FAC is a conclusory statement in the fourth claim for relief, for violation of Section 17500.  (FAC, ¶ 88.)  This paragraph states that Plaintiff "relied upon the advertisements and misrepresentations."  As discussed below, however, Plaintiff concedes in the Opposition that she has not adequately pled, and her claim is not based on, any advertisements or misrepresentations, but rather, solely on non-disclosure.  This allegation, therefore, does not establish standing to bring a §17500 claim based on non-disclosure.  In addition, this allegation is not incorporated into Plaintiff's §17200 claim.  The 17200 claim does not contain even a passing reference, much less factual allegations supporting, reliance.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{145243.2}                    13

Case No.:  2:16-cv-04129-SVW (FFMx)
REPLY MEMORANDUM ISO MOTION TO DISMISS FAC

1    12132064 (C.D. Cal 2013), cited by Plaintiff, is not to the contrary.  This Motion

2    does not seek any determination about "whether a business practice is deceptive."

3    (Opp., at 15, quoting *Otto*.)  This is a question of standing and pleading the required

4    element of reliance, which is entirely appropriate to address on motion to dismiss.

5    See *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Kane v. Chobani, Inc*., 973

6    F. Supp. 2d 1120, 1128-29 (N.D. Cal. 2014), *vacated on other grounds*, 645 F.

7    Appx. 593 (9th Cir. 2016).

8                    3.    <u>The FAC Fails to Meet Federal Pleading Standards for</u>

9                          <u>Fraudulent Practices under the UCL and FAL</u>

10           In the moving papers, 123RF demonstrated that Plaintiff failed to state a

11   claim under the "fraudulent" prong of UCL because (in addition to the failure to

12   allege reliance as discussed above) she "did not identify with particularity any

13   specific fraudulent or misleading statements made by" 123RF.  (Mot., at 14 (citing

14   *Gomez v. Wells Fargo Home Mortg.*, No. C 11-01725, 2011 WL 5834949, at *12

15   (N.D. Cal. Nov. 21, 2011).)  Likewise, Plaintiff's claim under the FAL failed as it

16   did not "identify specific advertisements, when and where they were shown, and

17   why they were untrue or misleading."  (*Id.* (citing *In re Sony Grand Wega KDF-E*

18   *A10/A20 Series Rear Projection HDTV Television Litig*., 758 F. Supp. 2d 1077,

19   1093 (S.D. Cal. 2010)).[8]

20           In opposition, Plaintiff does not dispute that she alleged no specific

21   misleading, deceptive, or false statement or advertisement.  Instead, Plaintiff argues

22   that she is not required to do so, and that her allegation of non-disclosure of the

23   expiration dates suffices to state a claim. Plaintiff is wrong on both counts.

24

25

26   _____

[8] Plaintiff purportedly quotes 123RF's moving papers as arguing that Plaintiff's fraud
27   allegations are "hopelessly vague."  (Opp., at 16.)  The moving papers do not say this
     anywhere. 123RF moves to dismiss not on grounds of general "vagueness," but on
28   Plaintiff's failure to allege any actionable misrepresentation or omission, and the failure to
     satisfy Rule 9(b) pleading standards.

{145243:2}                                          14

1    First, Plaintiff ignores the federal pleading standards under Rule 9(b) for

2  these claims and does not address any of the federal authorities cited in the Motion.

3  (Mot., at 13-14.)  Plaintiff cites to state law cases and claims she need not plead

4  with specificity but must only plead that consumers are "likely to be deceived."

5  (Opp., at 16, 17.)  As we are in Federal Court, Plaintiff is simply wrong. Plaintiff

6  must allege facts regarding specific false or misleading statements or

7  advertisements and has not done so.  (*See* Mot., at 13-14 (citing *Kearns v. Ford*

8  *Motor C*o., 567 F.3d 1120, 1125 (9th Cir. 2009), and other authorities).)

9    Second, while Plaintiff does allege non-disclosure of the expiration policy,

10  this does not suffice to state a claim.  Plaintiff argues she must only allege that

11  consumers "had an expectation or an assumption about the matter in question."

12  (Opp., at 16.)  Even if this were the standard, Plaintiff does not meet it as the FAC

13  contains no such allegation. (Plaintiff cites to none because it is not there. [See Opp

14  at 17.])  Further, this is not the standard. Rather:

15        Under California law, an allegedly fraudulent omission is

16        actionable only if the omission is "contrary to a representation

17        actually made by the defendant, or an omission of a fact the

18        defendant was obliged to disclose." *Daugherty v. Am. Honda*

19        *Motor Co.*, 144 Cal. App. 4th 824, 835, 51 Cal.Rptr.3d 118

20        (2006). "California courts have generally rejected a broad

21        obligation to disclose...." *Wilson v. Hewlett–Packard Co.*, 668

22        F.3d 1136, 1141 (9th Cir. 2012).

23  *In re Seagate Technology LLC Litigation*, --F. Supp. 3d--, No. 16-cv-0523, 2017

24  WL 528398, at *13 (N.D. Cal. Feb. 9, 2017).  The cases cited by Plaintiff are not to

25  the contrary and do not establish any duty to disclose here, as the defendant in each

26  case made either affirmative misrepresentations or was under an independent legal

27  duty to disclose. *Blakemore v. Superior Court*, 129 Cal. App. 4th 36 (2005),

28  involved an affirmative misrepresentation; in *Pastoria v. Nationwide Ins*., 112 Cal.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{145243.2}                                15

Case No.:  2:16-cv-04129-SVW (FFMx)
REPLY MEMORANDUM ISO MOTION TO DISMISS FAC

App. 4th 1490 (2003), the defendant was an insurer with a statutory duty to disclose; in *Collins v. eMachines, Inc*., 202 Cal. App. 4th 249 (2011), the complaint alleged the defendant had exclusive knowledge of and actively concealed a "critical" computer defect; and *McAdams v. Monier, Inc.,* 182 Cal. App. 4th 174 (2010)*,* which Plaintiff represents involved a 17500 claim but in fact did not, involved a non-disclosure that was contrary to multiple, specifically pled affirmative representations.

Plaintiff has not pled that the alleged non-disclosure of the expiration policy was contrary to any affirmative representation, nor has she alleged that 123RF had any legal obligation to disclose.  Accordingly, these claims should be dismissed.

### C.     Plaintiff's Unjust Enrichment Claim Fails

Plaintiff cites one case for the proposition that unjust enrichment is an independent claim under California law.  (Opp., at 18.)  That case, however, predated *In re ConAgra Foods*, 908 F. Supp. 2d 1090 (C.D. Cal. 2012), cited in the Motion, which analyzed the question and controlling decisions in detail and found that "a cause of action for unjust enrichment is not cognizable.  Rather, unjust enrichment is a theory that permits recovery on other recognized causes of action, including plaintiffs' UCL and CLRA claims."  *Id.* at 1113-1114.  This theory of recovery, therefore, is already subsumed in Plaintiff's other claims.  There is no reason for a separate claim for unjust enrichment.[9]

As to whether Plaintiff has adequately alleged unjust enrichment, if such an independent claim did exist, the determination is the same discussed above as to Plaintiff's UCL and FAL claims.  If Plaintiff did not allege any actionable harm to herself from 123RF's expiration policy, it follows that 123RF received no "unjust" benefit.  See *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578 F. Supp. 2d 1229,

---

[9] The theory of unjust enrichment also does not apply where an enforceable contract exists between the parties.  *Durrell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010).  Accordingly, if Plaintiff is found to have pled the existence of a contract with 123RF, the claim for unjust enrichment should be dismissed.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{145243.2}                                                          16

Case No.:  2:16-cv-04129-SVW (FFMx)
REPLY MEMORANDUM ISO MOTION TO DISMISS FAC

1241 (C.D. Cal. 2008) (where plaintiff could not show any actionable misrepresentation or non-disclosure that affected his purchasing decision, claims under Section 17200 and for unjust enrichment both fail).

### III.   <u>CONCLUSION</u>

For all of the foregoing reasons, 123RF respectfully requests that the First Amended Complaint be dismissed.

Dated:  July 24, 2017                    UMBERG ZIPSER LLP

_____
Carole E. Reagan
Attorneys for Defendants 123RF, LLC and
123RF Limited

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{145243.2}                                 17

Case No.:  2:16-cv-04129-SVW (FFMx)
REPLY MEMORANDUM ISO MOTION TO DISMISS FAC